# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

JOHN HEGARTY,

    Petitioner,

vs.   Case No.:   3:13-cv-732-J-32JBT
                                                                       3:10-cr-284-J-32JBT

UNITED STATES OF AMERICA,

    Respondent.

_____/

## ORDER

This case is before the Court on Petitioner John Hegarty's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (Doc. 1).[1] Petitioner contends that the government breached commitments it made in the plea agreement regarding his sentence, and that counsel gave ineffective assistance by not objecting to the alleged breaches. The United States has responded (Doc. 5), and Petitioner has replied (Doc. 6).

Pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that an evidentiary hearing is not necessary to decide the petition. See Aron v. United States, 291 F.3d 708, 714–15 (11th Cir. 2002) (an evidentiary hearing on a § 2255 petition is not required when the petitioner asserts

---

[1] Citations to the record in the underlying criminal case, United States of America vs. Amadeo Jaimes, et al., Case No. 3:10-cr-284-J-32JBT, will be denoted as "Crim. Doc. __." Citations to the record in the civil § 2255 case, John Hegarty vs. United States of America, Case No. 3:13-cv-732-J-32JBT, will be denoted as "Doc. __."

1

allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming that the facts he alleges are true, he still would not be entitled to any relief). For the reasons set forth below, Petitioner's Motion to Vacate is due to be denied.

**I.     Background**

A grand jury charged Petitioner and three co-defendants with one count of conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. (Crim. Doc. 1). The United States also filed an "Information to Establish Prior Conviction," pursuant to 21 U.S.C. §§ 851(a)(1) and 841(b)(1)(A), which established that Petitioner had previously been convicted of possession of marijuana with intent to distribute. (Crim. Doc. 76).[2] The prior felony drug conviction increased Petitioner's mandatory minimum sentence from 10 years to 20 years under § 841(b)(1)(A).

Not long thereafter, Petitioner pled guilty to the charge pursuant to a written plea agreement. (Crim. Doc. 94). Petitioner admitted to working as a drug-and-money courier for one Amadeo Hernandez Jaimes, who led an organization that trafficked kilogram-quantities of cocaine between Texas and Florida. (See id. at 16-25). Although Petitioner himself only transported two kilograms of cocaine on one occasion, he put other drug couriers in contact with Jaimes (id. at 19-20), and "assisted in modifying the intake manifold in the engine compartment" of one of the

---

[2]     Petitioner did not contest the validity of the prior conviction, or whether it increased his mandatory minimum sentence. (Crim. Doc. 162 at 86).

operation's vehicles "so that Amadeo [Jaimes] could hide the kilograms of cocaine… during transport" (id. at 22).

In exchange for his plea, the government promised Petitioner that, pursuant to § 3E1.1(a) of the United States Sentencing Guidelines, it would recommend a two-offense-level reduction for acceptance of responsibility. (Id. at 2-3) The government also promised that it would recommend that Petitioner's offense level be reduced by a third level if he qualified under § 3E1.1(b). (Id.). Moreover, the United States agreed to consider moving to reduce Petitioner's sentence under U.S.S.G. § 5K1.1, 18 U.S.C. § 3553(e), or both, if Petitioner provided information that amounted to substantial assistance before the sentencing hearing. (Id. at 3-4).

The Presentence Investigation Report (PSR) held Petitioner responsible for 70 kilograms of cocaine, thereby giving him a base offense level of 36, as well as a Criminal History Category (CHC) of VI on account of having 24 criminal history points. (See Crim. Doc. 197 at 17 ¶ 35, 32 ¶ 89). However, because the PSR determined that Petitioner qualified to be sentenced as a career offender under U.S.S.G. § 4B1.1, and because his maximum sentence was life, Petitioner's base offense level became 37. (Id. at 18 ¶¶ 44-47, 32 ¶ 90). The PSR gave a three-level reduction for acceptance of responsibility, generating an adjusted offense level of 34 and a CHC of VI, which equated to a Guidelines range of 262 to 327 months in prison.

The United States made no objection to the three-level reduction for acceptance of responsibility. The United States also filed a motion under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) to recognize that Petitioner had provided substantial assistance.

3

(Crim. Doc. 135). The United States requested that the Court reduce the offense level by three additional levels to recognize Petitioner's cooperation. In doing so, the adjusted offense level would become 31 and the CHC would remain VI, yielding an advisory Guidelines range of 188 to 235 months. (See id. at 2, ¶ 6).

Petitioner's counsel objected to the PSR, and argued that the appropriate Guidelines range was 151 to 188 months. (Crim. Doc. 147 at 12). Specifically, Petitioner contended that the PSR overstated the drug quantity and that the career offender enhancement was in error. (Id. at 2-6). Petitioner also argued that he was entitled to a two-level "minor role" reduction, pursuant to U.S.S.G. § 3B1.2(b). (Crim. Doc. 147 at 6-10). Petitioner argued that compared with the other co-defendants, he was only a minor participant in Amadeo Jaimes's drug trafficking operation. Petitioner further contended that a downward variance was appropriate under 18 U.S.C. § 3553(a). (Id. at 10-12).

Petitioner's counsel presented each of these arguments at the sentencing hearing on June 20, 2012. (See Crim. Doc. 162 at 88-98). The Court rejected the minor role reduction argument. (Id. at 99; see also id. at 124). However, the Court sustained Petitioner's objection to the career offender enhancement and sentenced him without classifying him as such. (Id. at 120-22). Additionally, the Court gave Petitioner the benefit of the doubt as to the drug quantity, deciding that the preponderance of the evidence showed he was responsible for between five and 15 kilograms of cocaine instead of 70. (Id. at 122).

Therefore, the Court determined that pursuant to U.S.S.G. § 2D1.1(c), Petitioner's base offense level was 32. The Court applied a three-level reduction for acceptance of responsibility, decreasing Petitioner's offense level to 29. (Id. at 123). With a Criminal History Category of VI, Petitioner's Guidelines range was 151 to 188 months in prison. See U.S.S.G. § 5A (Sentencing Table) (2011). The Court recognized that a 20-year (240-month) mandatory minimum sentence applied, however. Pursuant to United States v. Head, 178 F.3d 1205 (11th Cir. 1999), the mandatory minimum sentence trumped the 151-to-188-months Guidelines range, and the Court had to apply any reduction for substantial assistance starting from the 240-month mandatory minimum. (See Crim. Doc. 162 at 106-07, 123, 127-29).

The Court readjusted Petitioner's offense level to account for the minimum sentence. The Court increased Petitioner's offense level back to 32 because that was "the first guideline range… that captures the 240 months" mandatory minimum. (Crim. Doc. 162 at 123); see also U.S.S.G. § 5A (reflecting that an offense level of 32/ CHC VI yields an advisory range of 210 to 262 months). From there, the Court granted the United States' three-level substantial assistance reduction, returning Petitioner to a final offense level of 29 and a CHC of VI, producing an advisory Guidelines range of 151 to 188 months.

The Court sentenced Petitioner to a term of 165 months in prison (Crim. Doc. 162 at 130), which was more than six years below the mandatory minimum. Petitioner did not file a notice of appeal, but the United States did for the purpose of challenging the Court's decision that Petitioner did not qualify as a career offender.

5

(See Crim. Doc. 156; Crim. Doc. 162 at 131). The United States dismissed the appeal on its own motion, however, and the Eleventh Circuit Court of Appeals dismissed the appeal on September 13, 2012. (Crim. Doc. 168).

Petitioner's motion to vacate is timely under 28 U.S.C. § 2255(f)(1).

## II.   Discussion

A challenge based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack. United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992). Likewise, a claim that the government breached an obligation under the plea agreement is cognizable on collateral review. United States v. Al-Arian, 514 F.3d 1184, 1191 (11th Cir. 2008) ("[A] § 2255 motion may be used to enforce promises made in a plea agreement.") (citations omitted).[3]

### A.   Ground One: Whether the United States breached Petitioner's plea agreement

Petitioner contends, for the first time on collateral review, that the United States breached the plea agreement by (1) failing to recommend a three-level reduction for acceptance of responsibility, and (2) failing to "adequately describe [his] cooperation" with law enforcement. Petitioner also suggests that the United States

---

[3]   Petitioner waived the right to collaterally challenge his sentence pursuant to his plea agreement. (See Crim. Doc. 94 at 11-12). However, the Court will not apply the waiver to either of the grounds in Petitioner's Motion to Vacate. With respect to the ground that the government breached the plea agreement, an appeal-waiver will not bar such a claim. United States v. Puentes-Hurtado, 794 F.3d 1278, 1284 (11th Cir. 2015). With respect to the ineffective assistance ground, the Court notes that in October 2014, the Department of Justice ("DOJ") announced a policy of not enforcing sentence-appeal waivers against ineffective assistance of counsel claims. Therefore, the Court will not dismiss either of the claims based on the collateral review waiver, but will proceed to address the merits.

breached the plea agreement by advocating a sentencing increase. Petitioner contends that at the plea hearing, the government told him that in calculating the sentence, the government "would start where the 851 left [Petitioner]… and 'come down' from there." (Id.) (emphasis in original).

As a preliminary matter, the Court notes that Petitioner procedurally defaulted this claim by failing to raise it either before this Court or on direct appeal. See Lynn v. United States, 365 F.3d 1225, 1234 (11th Cir. 2004) (citation omitted). Instead of alerting the Court to an alleged breach, Petitioner expressed neither surprise nor disappointment in the government's recommendations at the sentencing hearing. He only expressed remorse. (See Crim. Doc. 162 at 118-19). As Petitioner failed to preserve the error, the issue has been defaulted.

Nevertheless, because the Court considers it equally straightforward to simply address the merits of the claim, it will do so.[4]

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971). "Whether the government violated the agreement is judged according to the

---

[4] A petitioner can avoid a procedural default by establishing cause for and prejudice from the default. Lynn, 365 F.3d at 1234. A showing of ineffective assistance of counsel, in turn, can satisfy the cause and prejudice standard. Brown v. United States, 720 F.3d 1316, 1333 (11th Cir. 2013). Because Petitioner argues in Ground Two that counsel was ineffective for failing to object to the alleged breaches of the plea agreement, or to raise them on appeal, the Court would wind up needing to examine the merits of the underlying breach claim to answer the ineffective assistance claim anyway.

7

defendant's reasonable understanding [of the agreement] at the time he entered the plea." United States v. Rewis, 969 F.2d 985, 988 (11th Cir. 1992). Nonetheless, the Court "must use objective standards to determine the disputed terms of a plea agreement." In re Arnett, 804 F.2d 1200, 1202 (11th Cir. 1986). "[W]hen a plea agreement is unambiguous, [the Court] will not read into the agreement terms that were not agreed upon with specificity, even when the defendant misunderstood the agreement." Lovett, 601 F. App'x at 788 (citing Al-Arian, 514 F.3d at 1191-93). The Court will not consider parole evidence, such as a plea transcript, unless the "the language of the agreement is ambiguous, or where government overreaching is alleged." Raulerson v. United States, 901 F.2d 1009, 1012 (11th Cir. 1990). A clear breach of the plea agreement occurs where the government "unequivocally promises" to make a sentencing recommendation, and then advocates a position incompatible with that promise. United States v. Taylor, 77 F.3d 368, 370-71 (11th Cir. 1996).

Petitioner first contended that the United States breached the plea agreement "by not at any point asking for three levels for acceptance [of responsibility]." (Doc. 1 at 2). The United States had agreed to recommend a two-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a). (Crim. Doc. 94 at 2-3, ¶A.4). The United States further agreed to recommend that Petitioner receive a third offense-level reduction for acceptance of responsibility if he qualified under U.S.S.G. § 3E1.1(b). (Id.).

The record does not reflect that the United States verbally requested a three-level reduction for acceptance of responsibility. However, the Eleventh Circuit has

"held that the government is not required to verbally state its recommendation at sentencing, where the district court has before it a plea agreement containing the government's sentencing recommendation." Brown v. United States, 257 F. App'x 140, 144 (11th Cir. 2007) (citing United States v. Werner, 317 F.3d 1168 (10th Cir. 2003); United States v. Cates, 952 F.2d 149, 153-43 (5th Cir. 1992)). It was unnecessary for the government to verbalize the acceptance-of-responsibility recommendation because the plea agreement incorporated the recommended reduction (Crim. Doc. 94 at 2-3, ¶ A.4), the PSR gave Petitioner the full three-level downward adjustment contemplated by the agreement (see Crim. Doc. 197 at 18, ¶ 46), and so did the Court at the sentencing hearing (Crim. Doc. 162 at 123). The government did not oppose the three-level reduction at any juncture. Thus, the record does not show that the government took a position incompatible with its promise to recommend lowering Petitioner's offense level by three levels for acceptance of responsibility. Petitioner has not shown that the government breached the agreement by reneging on the acceptance-of-responsibility provision.

Second, Petitioner alleges that the United States breached the Plea Agreement by failing to "adequately describe [his] cooperation." (Doc. 1 at 2). Pursuant to the plea agreement, the United States agreed to consider moving for (1) a downward departure pursuant to U.S.S.G. § 5K1.1, (2) imposition of a sentence below the mandatory minimum, pursuant to 18 U.S.C. § 3553(e), or (3) both, if before sentencing, Petitioner provided cooperation that amounted to "substantial assistance" in the government's opinion. (Crim. Doc. 94 at 3-4, ¶ A.5). The plea

9

agreement also provided that "[t]he government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime." (Id. at 4, ¶ A.7). However, the plea agreement did not specify with what degree of detail the government was required to recount Petitioner's cooperation efforts.

The government complied with its obligations by moving for a sentence reduction under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) in recognition of Petitioner providing substantial assistance. (Crim. Doc. 135). In the substantial assistance motion, the government related that

> [w]hen arrested on June 2, 2011, [Petitioner] immediately cooperated with the DEA agent concerning his role in working as a courier for a substantial cocaine trafficker from Mission, Texas named Amadeo Hernandez Jaimes. [Petitioner] provided detailed information concerning his involvement in Jaimes' cocaine network spanning from Mexico to the Putnam County, Florida area.

(Crim. Doc. 135 at 1-2, ¶ 2). The government further stated that Petitioner agreed to testify against Amadeo Jaimes, and that Petitioner and other co-defendants "enabled the government to prove that Jaimes was the source" of 83 kilograms of cocaine that the United States seized in April of 2009. (Id. at 2, ¶¶ 3-4). The government concluded that Petitioner's "cooperation with the United States was indeed substantial and deserving of the Court's due consideration." (Id. at 2, ¶ 7). The government advised that Petitioner qualified for a three-level sentence reduction under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e). (Id. at 1).

At the sentencing hearing, the government reiterated that Petitioner's cooperation had been instrumental in getting Jaimes to plead guilty, and that Petitioner would have made a "compelling" witness had the government called on him. (Crim. Doc. 162 at 112-13). The government reaffirmed that Petitioner deserved a three-offense-level reduction for providing substantial assistance. (Id. at 113-14). The government recommended a sentence of 188 months, which was 52 months lower than the mandatory minimum. (See id.).

Thus, the record shows that the United States gave a favorable description of Petitioner's cooperation efforts, and it recommended the substantial assistance reduction it promised to consider. As such, the record does not support the claim that the government breached the plea agreement by failing to inform the Court of Petitioner's cooperation.

Third, Petitioner contends that the government breached the plea agreement by arguing in favor of a sentence increase. (Doc. 1 at 2). Petitioner does not specify what he means by that, but the Court supposes he is referring to the United States' argument that he qualified for a career offender enhancement under U.S.S.G. § 4B1.1. (See Crim. Doc. 162 at 99-103).

The government did not breach the plea agreement by arguing that Petitioner qualified as a career offender. As part of the agreement, the United States

> reserve[d] its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to

11

> correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

(Crim. Doc. 94 at 10). Thus, arguing that Petitioner qualified as a career offender based on his prior convictions did not run afoul of any provision of the plea agreement. To the contrary, it was consistent with the government's reservation of the right to make other sentencing recommendations based on "the background, character, and conduct of the defendant." (Id.). Moreover, the Court did not classify Petitioner as a career offender in any event. (Crim. Doc. 162 at 120-22).

Lastly, Petitioner contends that before and during the plea hearing, the prosecutor orally told him that in calculating the sentence, "we would start where the [§] 851 [enhancement] left me… and 'come down' from there." (Doc. 1 at 2) (emphasis in original). A court does not consider oral promises or parole evidence when the language of a written plea agreement is unambiguous. Raulerson, 901 F.2d at 1012. Because Petitioner has not identified what provisions of the written agreement were ambiguous, the Court will not allow the introduction of parole evidence to inform its interpretation of the agreement.

Even if the Court considered the oral statement as part of the agreement, the Court still would not find that a breach occurred. The United States did "come down" from the 20-year mandatory minimum when it suggested a sentence of 188 months, which was 52 months (more than four years) below the statutory minimum. (Crim. Doc. 162 at 114). The Court imposed an even lower sentence of 165 months, which was 75 months (more than six years) below the mandatory minimum. Accordingly,

even if the Court incorporated the alleged oral promise into the plea agreement, it would not find that a breach occurred because Petitioner still received a sentence well below the statutory floor.[5]

In support of his motion, Petitioner points the Court to the opinion in <u>Taylor v. United States</u>, 77 F.3d 368, <u>supra</u>, a portion of which is attached to his Reply. (<u>See</u> Doc. 6 at 3-5). In <u>Taylor</u>, the court found that the government breached the plea agreement where it had promised to recommend a sentence of ten years, but instead supported the PSR's recommended sentencing range of 151 to 188 months. <u>Id.</u> at 369-71. The court held that the government "failed to carry out its part of the plea agreement" because it "advocated a position contrary to its agreed-upon recommendation." <u>Id.</u> at 371. This case is distinguishable, because the government did not take a position at sentencing that was contrary to any of the provisions of the plea agreement. Rather, Petitioner received the benefit of his bargain when he received a sentence that was significantly below the mandatory minimum.

In light of the foregoing, Petitioner has failed to establish that the government breached the plea agreement.

### B. Ground Two: Whether counsel gave ineffective assistance by failing to object to the alleged breaches of the plea agreement

In Ground Two, Petitioner argues that counsel "failed to look out for [his] best interest" by not objecting at the sentencing hearing to the alleged breaches of the plea

---

[5] Petitioner also suggests in his Reply, for the first time, that the government breached the plea agreement by opposing a minor-role reduction. (<u>See</u> Doc. 6 at 1). However, nowhere in the plea agreement did the government promise Petitioner that it would support, or at least not oppose, such a downward adjustment.

13

agreement. (Doc. 1 at 3). Petitioner also states, in response to a question about why Ground One was not raised on direct appeal, that he requested counsel to raise that issue on appeal, but that counsel did not do so.[6]

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both (1) that counsel's performance was deficient, and (2) that as a result of counsel's deficient performance, the petitioner suffered prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). In determining whether counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994). The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." Id. To show that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 1036-37 (citing Strickland, 466 U.S. at 694). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694.

Defense counsel did not render ineffective assistance. For the reasons discussed above under Ground One, Petitioner has not identified an underlying breach of the plea agreement, let alone a breach that was obvious enough to mark

---

[6] On page 2 of the § 2255 form, Petitioner says: "Asked Attorney to but he did not." The Court does not construe this seven-word sentence as stating a separate ground of ineffective assistance of counsel for failing to file a requested appeal under Roe v. Flores-Ortega, 528 U.S. 470 (2000). The statement is far too brief and conclusory to adequately plead such a ground.

14

counsel's performance as ineffective for not objecting to it. See Gordon v. United States, 518 F.3d 1291, 1298 (11th Cir. 2008) ("The failure to object to a single error that is either unobvious or nonprejudicial does not 'stamp [counsel's] overall performance with a mark of ineffectiveness.'") (quoting Chatom v. White, 858 F.2d 1479, 1485 (11th Cir. 1988)). Because there was no underlying breach of the plea agreement, counsel's performance was neither deficient nor prejudicial for not raising the issue, either at the sentencing hearing or on appeal. See Card v. Dugger, 911 F.2d 1494, 1520 (11th Cir. 1990) ("Counsel cannot be labeled ineffective for failing to raise issues" that lack merit).

The Court adds that counsel successfully objected to the portions of the PSR relating to the drug quantity and the career offender enhancement. (See Crim. Doc. 162 at 88-98, 120-22). Counsel's advocacy resulted in Petitioner starting off with a lower base offense level, and, in the end, a lower Guidelines range than what would have existed had each portion of the PSR remained intact (Petitioner's Guidelines range would have been 188 to 235 months after the substantial assistance reduction had the Court adopted the PSR in its entirety, but instead Petitioner's ultimate Guidelines range was 151 to 188 months). Relief on Ground Two is due to be denied.

Accordingly, it is hereby

**ORDERED:**

1. Petitioner John Hegarty's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 1) is **DENIED**.

2. The Clerk shall enter judgment in favor of the United States and against Petitioner, and close the case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue… only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Petitioner has not made the requisite showing in these circumstances. Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** at Jacksonville, Florida this 21st day of April, 2016.

TIMOTHY J. CORRIGAN
United States District Judge

lc 19

Copies:

Counsel of record
Petitioner John Hegarty